# HILLSBOROUGH,

## DECEMBER TERM, A. D. 1841.

---

### CAMPBELL & a. *vs.* WALLACE.

After a partition of real estate by a decree of the court of probate, and an acquiescence and occupation under it, for the term of twenty years, the proceedings must be presumed to have been regular, and be held conclusive.

If a husband assents to a partition by which his wife receives more than her share of the real estate, and pays the balance, he acquires no title himself to the land thus set off, except what his marital rights confer upon him.

An entry into land in behalf of another, even if it is without authority at the time, being for the benefit of the party having the right, may be ratified, and will prevent the operation of the statute of limitations.

Parties who take together by descent, under our statutes, may join in an action for the recovery of the land as coparceners.

And if several join, and one is omitted, the exception can be taken only in abatement.

Or they may elect to pursue their remedies as tenants in common, in which case they should bring several actions. But if tenants in common join in a real action, the objection must in general be taken in abatement, or by motion for a nonsuit at the trial. It is too late to take it after verdict, unless the matter appear upon the face of the record.

An individual whose father appears to have been a resident in this country, and to have married and had children born here, is presumed to be a citizen, although he himself was born subsequently to his father's removal to a foreign country; there being nothing else to show his father to have been an alien.

WRIT OF ENTRY, dated February 3, 1837, in which the plaintiffs count on their own seizin, within twenty years, of one undivided half of a certain lot of land, situated in Milford. Plea, the general issue.

It appeared in evidence that in April, 1807, George Burns, of Milford, died intestate, leaving six daughters, viz: Anna Burns; Sarah Campbell, wife of Robert Campbell, the mother of the demandants; Hannah Tuttle, wife of Charles Tuttle;

Campbell *v.* Wallace.

Jemima Burns; Esther Lovejoy, wife of William Lovejoy; and Elizabeth Burns. He was seized, at the time of his death, of the demanded premises, and other real estate.

By the decree of the judge of probate, dated December 15th, 1807, made conformably to the report of a committee, certain lands, of which the demanded premises are a part, were assigned to Esther Lovejoy, with the consent of her husband, " she paying to the co-heirs, or giving good security in the probate office, for their proportionable shares of the value, agreeably to the directions of said committee; that is to say, to Elizabeth Burns $174.00 on demand with interest, and $500.00 to Hannah Tuttle, or her legal representatives." The residue of the estate, excepting the widow's dower, was decreed to Anna Burns, she paying to the other heirs their respective shares of the appraised value.

There was no evidence on file that the committee caused the parties concerned to be notified when they were to proceed and make partition, except the commission of the judge of probate to Augustus Blanchard, appointing him agent to act in this matter on behalf of Charles Tuttle and wife, and Robert Campbell and wife, who were not inhabitants of this state, which is on file in the probate office, on the back of which commission is an acknowledgment of notice, and of appearance before the committee, and assent to their doings, signed by him.

Anna Burns entered into and held the premises assigned to her, and no objection was made by the other heirs.

William Lovejoy, the husband of Esther Lovejoy, gave a bond, which was filed in the probate office, to pay $500 to Hannah Tuttle, according to said decree. The other heirs were paid the sums decreed them as their respective shares. February 11, 1808, Lovejoy and wife conveyed to Tuttle and wife two tracts of land, containing eight acres, each being parts of the land assigned to said Esther as aforesaid, but no part of the demanded premises; and on the same day Tuttle and wife conveyed to Lovejoy and wife all " their

right in and unto two-thirds of the estate of George Burns, late of said Milford, deceased, that is to say, the whole of said estate except the widow's thirds," and by the same deed discharged the said William Lovejoy from his obligations to pay to said Hannah Tuttle $500 as aforesaid.

The demanded premises are one undivided half of all the land assigned to Esther Lovejoy, as aforesaid, excepting the two tracts aforesaid.

July 5, 1819, William Lovejoy mortgaged the demanded premises and other lands, to Joel Crosby, and August 21st, 1820, released to said Crosby his right to redeem the same. March 3, 1826, Joel Crosby conveyed the same premises by warranty to Royal Wallace, who died September 25th, 1829. In November, 1829, the same premises were assigned to the defendant, who is the widow of Royal Wallace, as part of her dower in his estate, and she has ever since been in possession as tenant in dower.

Sarah Campbell died in 1809, leaving children, Charles, James, Sarah, Alexander, Catharine, and Robert N., the plaintiffs, (of whom the two first named are inhabitants of the United States, and the others are inhabitants of Dorchester, Nova Scotia,) and one other son, George B., now living, who was born and now lives in Nova Scotia. The plaintiffs were all born in Milford.

Anna Burns died unmarried, and without issue, in 1815. Esther Lovejoy died April 11, 1816, never having had issue. Jemima Burns and Elizabeth have since died unmarried, and without issue. William Lovejoy died in 1823. Hannah Tuttle and the heirs of Sarah Campbell are the only heirs of Esther Lovejoy now living. Robert Campbell, father of the plaintiffs, died before the institution of this suit.

In the summer of 1835, Jesse Bowers, a deputy sheriff, having a writ of entry in favor of Tuttle and wife against the defendant, to recover her undivided half of the demanded premises, made an entry upon the same for Tuttle and wife, and also at the same time, by direction of Messrs. Abbot &

Fox, who were attorneys for the heirs of Sarah Campbell, made an entry upon the same in their behalf.

A verdict was taken for the plaintiffs, by consent, subject to be set aside and a new trial granted, according to the opinion of this court on the above evidence.

*Farley, & S. K. Livermore,* for the defendant. George B. Campbell was not an alien, and he ought therefore to have been joined, if the heirs of Mrs. Campbell are to be regarded as parceners.

But it is doubted whether there is any such thing as coparceners here. The statute regulates the descent, and all the heirs must be regarded as tenants in common.

If there was a coparcenery, the recovery by Mrs. Tuttle broke it up, and upon that they became tenants in common.

Besides, they declare on their own seizin, and for that reason must be deemed tenants in common. Tenants in common cannot join in a real action.

If regarded as parceners, the two eldest cannot maintain the action, because they are barred by the statute of limitations, being residents of this state. 1 *N. H. Laws* 74. On the death of Mrs. Lovejoy, in 1816, her husband ceased to have any interest in the demanded premises, and the action was not commenced until 1837.

An entry by one person may avail for another, if it is not restricted. But here the entry of Tuttle and wife was restricted to her rights, and the attorneys of the heirs of Mrs. Campbell had no authority to substitute Bowers to make an entry for them. *Bac. Abr., Auth., D ;* 12 *Mass. R.* 237, *Emerson* vs. *Prov. Hat Man. Co. ;* 4 *Mass.* 522, *Stoughton* vs. *Baker ;* 7 *N. H. Rep.* 298, *Andover* vs. *Grafton.*

If the right of part of the plaintiffs is barred, there cannot be judgment for the others. 1 *Chitty's Pl.* 54 ; 4 *Pick.* 234, *Grozier* vs. *Atwood ;* 5 *N. H. Rep.* 391, *Murray* vs. *Webster.*

If the partition was inoperative because the parties were not notified, there might be some different result.

*C. H. Atherton, Abbot, & Fox,* for the plaintiffs. The plaintiffs are children of Sarah Burns, who married Campbell.

One child, George B., is not included in this writ. He was born in Nova Scotia. If he is an alien, the property descends the same as it would do if he were not in existence. 7 *N. H. Rep.* 475, *Montgomery* vs. *Dorion ;* 4 *Wheat. R.* 453, *Orr* vs. *Hodgdon ;* 6 *Peters* 102, *Lessee of Levy* vs. *McCartee ;* 7 *Wend.* 333, *Jackson* vs. *Green ;* 10 *Wend.* 9, *Jackson* vs. *Fitz Simmons ; Co. Litt.* 8, *a.* In case of purchase, an alien may take and hold till office found, but he takes nothing by descent.

If he is not an alien, the suit might have been defeated if the omission to join him had been pleaded in abatement, they suing as parceners. As the defendant has not so pleaded, the plaintiffs are entitled to recover their shares. 2 *Pick.* 387, *Dewey* vs. *Brown, and auth. cited ;* 1 *Wms. Saund.* 291, *g ;* 1 *Chitty's Pl.* 53 ; *Litt.* § 311 ; *Booth's R. A.* 271 ; *Com. Dig., Abatement, E,* 8 ; *Co. Litt.* 164, *a ;* 12 *Mass.* 495, *Sheffield* vs. *Lovering ; Denn* vs. *Purvis,* 1 *Burr.* 329.

There was no adverse possession until Lovejoy conveyed in 1820.

An entry of one joint owner is the entry of all. If so, the recovery of Tuttle and wife, and their entry, would avail for the benefit of the plaintiffs.

A parol authority to enter is sufficient. 16 *Pick. R.* 56, *Burrage* vs. *Smith.*

If the statute of limitations runs against any of the coparceners, the estate goes to the others.

The plaintiffs were in fact minors in 1820, and, if necessary, we must move to amend the case so as to show that fact.

PARKER, C. J. It may be questionable whether the validity of the partition of the estate of George Burns is of importance in the decision of this case. But we are of opinion that after the heirs had acquiesced in it, and an occupation had been had under it for the term of twenty years, the pro-

ceedings in the probate court must be presumed to have been regular, and be held conclusive. It appears, therefore, that Esther Lovejoy was well seized of the demanded premises, by means of that partition. The execution of the note by her husband transferred no interest to him. If he had paid the money, there would have been no resulting trust for his benefit. The land was set off to the wife, and the husband would have paid the amount for her, having the benefit of the use himself during the coverture. But it seems the payment was made, in part at least, by the conveyance of two other tracts of land which were the property of the wife.

It appears to be conceded by the course of the argument, that the defendant must rely upon the inability of the plaintiffs to make out their case in the first instance. As Esther Lovejoy never had issue, the land, upon her death, descended to her heirs, and the occupation of it afterwards by her husband, and his subsequent conveyance of it to Crosby, were unwarranted. Her heirs were her sister, Mrs. Tuttle, and the children of Mrs. Campbell, or those of them who may inherit.

The statute of limitations interposes no bar to the maintenance of this action. The descent was in 1816. In 1835, Bowers, at the request of the attorneys of the plaintiffs, made an entry upon the land in their behalf, and the plaintiffs have ratified the act. This is sufficient to prevent the operation of the statute. 2 *Fairf. R.* 70, *Richards & ux.* vs. *Folsom; Co. Litt.* 258, *a;* 2 *Strange* 1128, *Fitchell* vs. *Adams;* 2 *Kent's Com.,* Lec. 41; *Despatch Line of Packets* vs. *Bellamy Man. Co. & Trustees, ante* 205.

If the plaintiffs and Mrs. Tuttle are to be regarded as parceners, the entry of Tuttle and wife, if it was a general entry, might perhaps have availed for the benefit of the plaintiffs. *Com. Dig., Parceners, A,* 3; 2 *Cruise's Dig.* 528.

A question is made whether there is any estate in coparcenery under our statutes; and it is objected that if there is, the plaintiffs must be regarded as tenants in common, and the action therefore not well brought, because they have

joined in it ; and further, that regarding them as coparceners, it cannot be maintained, because there is another who ought to have been joined.

By the statute of this state, regulating descents, males and females inherit together in equal shares. If there are no sons, and the estate descends to the daughters alone, there seems to be no reason why that does not constitute strictly an estate in coparcenery. And there is no essential difference in the quality of the estate where the descent is to males as well as females. They take in the same manner, and with equal rights. The title partakes of the nature of coparcenery at the common law, and coparcenery by the custom of gavelkind in Kent, or may be said to be a union of the two. *Litt.* § 241 ; *Co. Litt.* 164 ; *Com. Dig., Parceners, B. ; Ditto, A,* 7. " An estate in coparcenery also frequently arises in consequence of customary descents to all the children, in which case they are coparceners." 2 *Cruise's Dig.* 537. The heirs of Esther Lovejoy come, therefore, within the description of coparceners, and might be so regarded if the case required it. The distinction between estates in coparcenery and in common, is undoubtedly of limited importance, and is little regarded here. Chancellor Kent says—" As estates descend in every state to all the children equally, there is no substantial difference left between coparceners and tenants in common. The title inherited by more persons than one is in some of the states expressly declared to be a tenancy in common, as in New York and New Jersey ; and where it is not so declared the effect is the same ; and the technical distinction between coparcenery and estates in common may be considered as essentially extinguished in the United States." 4 *Kent's Com.* 363, [367.] But we see no sufficient reason why those who thus take by descent should be imperatively required to sever in an action for the recovery of the land, and are of opinion that they may well be regarded as parceners, for the purpose of their remedy in this respect. If they may be considered as tenants in common, and if they may sever

as such, the technical reason why tenants in common must sever does not exist.

Regarding the children of Mrs. Campbell as coparceners, George B. Campbell ought to have been joined, if he is not an alien, and the descent was to him along with the others. *Stearns on R. A.* 197 ; 7 *Mass. R.* 136, *Daniels* vs. *Daniels.* But the objection should have been taken in abatement. *Com. Dig., Abatement, E,* 8 ; *Co Litt.* 164, *a.* This appears to be the settled rule, although the following paragraph, in a late treatise on real actions, by a distinguished jurist, seems to indicate an opinion that it ought to be otherwise. " In the class of pleas to the person of the demandant, Comyns includes those which show that another ought to have joined as demandant in the writ. It is now well settled that in personal actions this defect need not be pleaded in abatement. If the fact appears in evidence on the general issue, or on any issue on which the plaintiff is put to show his title, or cause of action, as set forth in his declaration, he will be nonsuited, or have a verdict against him ; and there seems to be no reason why the same rule should not have been adopted in real actions." *Jackson R. A.* 68. What class of personal actions is here referred to, is not said. If it be actions arising on contracts it is true, but there is little analogy between a writ of entry, founded on a disseizin by the defendant, and an action on a contract. In personal actions *ex delicto,* which have some similitude, the rule is otherwise. 1 *Chitty's Pl.* 52, 53 ; 9 *N. H. Rep.* 74, *Wilson* vs. *Gamble.*

In the view we have taken of the case, it is not important to consider whether the recovery by Tuttle and wife, of her share of the land, was not a severance of the coparcenery.

If the plaintiffs were treated as tenants in common, the result must be the same. Viewed in that light, they ought not to have joined. 6 *N. H. Rep.* 330, *Hills* vs. *Doe* ; 1 *Pick. R.* 228, *Rehoboth* vs. *Hunt.*

The reason why the common law should have required tenants in common to sever in real actions is not perhaps per-

Campbell *v.* Wallace.

fectly apparent. Although seized by several titles, so that they may be regarded as having several freeholds, a common ownership and a common wrong done might well have furnished the ground of a common action. They must join in trespass or nuisance to their land, (1 *Chitty's Pl.* 53 ; 13 *Johns. R.* 286, *Austin* vs. *Hall,*) and in detinue for charters. *Co. Litt.* 197, *b.* If one sue alone, it may be pleaded in abatement. *Com. Dig., Abatement, E,* 10. And it can be taken advantage of only in that way. 8 *Johns. R.* 151, (117, *2d Ed.,*) *Bradish* vs. *Schenck.* So they must join in case, for the destruction of their charters or title deeds. 7 *Mass. R.* 135, *Daniels* vs. *Daniels.*

In Massachusetts, Maine, and Virginia, they may join in real actions by statute. 1 *Hilliard's Abr.* 454, *and cases cited ;* 12 *Pick. R.* 38, *May* vs. *Parker ;* 2 *Fairf. R.* 180, *Swett* vs. *Patrick.* And in Connecticut they may join by the common law of that state. 4 *Day* 298, *Bush* vs. *Bradley ;* 3 *Conn. R.* 191, *Clark* vs. *Vaughan.* In Vermont they may join in ejectment. 4 *Cranch R.* 164, *Hicks* vs. *Rogers.* Whether by the practice of that state, or by statute, was not settled. And in this state, where joint tenants sued, it was held to be no defence that they had since, by operation of law, become tenants in common. 6 *N. H. Rep.* 328.

These cases may serve to show that the objection is one which cannot be extended by any equitable consideration. It is to be taken as matter of authority, on a technical reason.

In what manner the objection, that tenants in common have joined, is to be taken, does not very distinctly appear in the books. Comyns says that in a real action by two, when one only ought to sue, it may be pleaded in abatement. *Com. Dig., Abatement, E,* 15. But it seems that it is not always necessary to plead this matter specially, either in abatement or bar. *Jackson R. A.* 70.

In personal actions *ex delicto,* if too many be made plaintiffs, and the objection appears on the record, it may be the ground of demurrer, arrest of judgment, &c. If not appa-

Campbell *v.* Wallace.

rent it may be taken on a motion for a nonsuit. *Chitty's Pl.* 54. The same principle seems to be applicable in real actions, if the objection is not required to be taken in abatement. There is nothing on the record here on which to arrest the judgment. The misjoinder was not moved as a ground of nonsuit, at the trial, and we are of opinion that it is too late to take the exception after verdict.

There is nothing in the case on which we can determine that George B. Campbell is an alien. The fact that he was born in Nova Scotia does not necessarily make him such. If, as was suggested in the argument, Robert Campbell, the father, was a British subject, the children may all be aliens. 2 *Laws U. S., Story's Ed.,* 853; 4 *Dane's Abr.* 700; 3 *Peters' Rep.* 242, *Shanks* vs. *Dupont;* 1 *U. S. Digest* 134, *pl.* 21; *Ditto* 135, *pl.* 28; 21 *Wend. R.* 392, *Young* vs. *Peck;* 17 *Pick.* 70, *Charles* vs. *The Monson & Brimfield Man. Co.* But that fact does not appear, and is not to be presumed. The case shows him to have been a resident in this country, and to have married here; and the plaintiffs were born here. His subsequent removal to Nova Scotia is, of itself, immaterial. The plaintiffs, therefore, as the case stands, make title to six-sevenths of the demanded premises.

*Judgment for the plaintiffs.*