## BURLEIGH *v.* COFFIN, Adm'r.

By marriage, the husband, in the absence of all antenuptial agreements, becomes entitled to the rents and profits of the chattels real of the wife, and the income of all her real estate during coverture; and he cannot charge the wife, or her estate after her death, for services rendered or moneys paid in improving her

real estate during coverture; nor for moneys expended in settling controversies in regard to her real estate.

Where the husband brought in a claim against the estate of his deceased wife, for services rendered and labor bestowed in improving her real estate during coverture; and also for monies paid in settling controversies in regard to said real estate. *Held*, that the claim could not be allowed.

By marriage, the husband becomes the absolute owner of all the personal property in possession of the wife, and can reduce her *choses in action* to possession, and the avails thereby become his. He also becomes liable for all her debts. A debt from him to her, or from her to him, becomes cancelled by the marriage.

A gave to B, who afterwards became his wife, a deed of a piece of land for the alleged consideration of four hundred dollars, and, after her decease, he claimed to have the amount allowed against her separate estate. *Held*, that the debt became cancelled by the marriage, and was, therefore, not a legal claim against the estate.

APPEAL, by the administrator from the decree of the Judge of Probate, accepting the report of the commissioner on the estate of Sarah Burleigh, wife of the plaintiff, whereby a portion of the claim of the plaintiff was allowed.

Upon an appeal being taken, and notice thereby given, according to statute, the plaintiff, Daniel Burleigh, represented to the Judge of Probate that he had been notified "by Jonathan Coffin of Alton, administrator of the goods and estate which were of Sarah Burleigh, wife of Daniel Burleigh aforesaid," that he had filed his petition claiming an appeal from the decision of the commissioner; wherefore the said plaintiff filed his declaration agreeable to the statute in such cases provided.

The declaration was as follows: "For that Sarah Burleigh, late of Sanbornton, aforesaid, deceased, at Gilford, being indebted to said Burleigh during her lifetime in the sum of one thousand and fifty-one dollars and sixty-four cents, according to the account hereto annexed, in consideration thereof then and there promised to pay him that sum on demand; yet, though requested, the said Sarah Burleig 1 ever paid the same in her lifetime, nor has her administrator paid the same since her decease."

The account annexed contained twenty-three items, reaching from 1824 to 1848, most of them for expenditures in carrying on

the farms of the said Sarah, and repairing the buildings thereon. Also for expenses and costs on a reference relative to said farms, and a bond given by himself and wife to pay certain moneys required to be paid by the referees. The account was headed, — "Account of Daniel Burleigh against the estate of his wife Sarah Burleigh, lately deceased." The last item in the account was stated to be, " a tract of land, forty acres, part of my homestead, valued at $400, conveyed to my wife before marriage, without consideration." The declaration proceeded as follows : Also for that the said Sarah Burleigh at Gilford, during her lifetime, being indebted to the said Daniel Burleigh in the sum of one thousand and fifty-one dollars and sixty-four cents, for labor and services before the decease of said Sarah, done and per- formed by the said Burleigh, for the said Sarah Burleigh, at her request, in consideration thereof, then and there promised the said Daniel to pay him that same sum on demand. Yet though requested, the said Sarah never paid the same in her lifetime, nor has her administrator paid the same.

Also in a plea of the case, for that the said Sarah Burleigh, during her lifetime, being indebted to the said Daniel Burleigh in the same sum, for so much money before the decease of the said Sarah, paid, laid out, and expended by the said Daniel for the said Sarah at her request, in consideration thereof, the said Sarah then and there promised the said Daniel to pay him that sum on demand. Yet, though requested, the said Sarah never paid the same in her lifetime, nor has her administrator paid the same since her death.

Also, in a plea of the case for that the estate of the said Sarah Burleigh, at Gilford, aforesaid, on the fifth day of June, 1848, being indebted to the said Daniel in the further sum of ten hundred fifty-one dollars and sixty-four cents, according to the account hereto annexed, and in consideration thereof, then and there promised the said Daniel to pay him that sum on demand. Yet, though requested, the said administrator has not paid the same.

Also, in a plea of the case, for that the said Sarah before her intermarriage with the said Daniel, at Sanbornton, aforesaid, in

Burleigh *v.* Coffin.

consideration that the said Daniel would convey to her, the said Sarah, a certain tract of land situated in said Sanbornton, she, the said Sarah, would pay him therefor the sum of four hundred dollars; and the said Daniel avers that he did convey the same land to the said Sarah before his intermarriage with her, and in consideration thereof she then and there promised the said Daniel to pay him that sum on demand. Yet, though requested, the said Sarah did not pay the same to the said Daniel before her intermarriage with the said Daniel nor during her lifetime; nor has her administrator since her decease.

Also, for that the said Sarah, at Sanbornton aforesaid, before her decease, and during her intermarriage with the said Daniel, in consideration that the said Daniel would make certain improvements, and erect certain buildings upon the lands of the said Sarah, which she held in her own right, and defend certain suits growing out of the said lands held in the right of the said Sarah aforesaid, and pay certain sums of money which the said Sarah was liable to pay in consequence of said lands and suits, she would pay him the same sums and for the said improvements and buildings on demand. And the said Daniel avers, that he has made divers permanent improvements upon the lands of the said Sarah, during his intermarriage with the said Sarah, to the value of four hundred dollars, and has erected and repaired divers buildings on the said lands, to the value of three hundred dollars, and has paid over for the said Sarah divers sums, as aforesaid, to the amount of three hundred and fifty dollars, and has bestowed his own time and care in and about the said business as aforesaid. Yet, though requested, the said Sarah never paid the same in her lifetime, nor has her administrator since her decease, nor either of them.

Also, for that the estate of the said Sarah, at Gilford, on the fifth day of June, 1848, being indebted to the said Daniel in the further sum of ten hundred dollars for labor and services done and performed by the said Daniel upon the estate of the said Sarah before her decease and since, in consideration thereof, then and there became liable to pay the said Daniel the said

sum on demand. Yet, though requested, the said administrator has not paid the same.

Also, in a plea of the case for that the estate of the said Sarah, at Gilford, aforesaid, on the 5th day of June, 1848, being indebted to the said Daniel in the further sum of ten hundred dollars for so much money paid, laid out, and expended for the benefit of and upon the estate of the said Sarah, and in consideration thereof, then and there became liable to pay the said Daniel the said sum on demand. Yet, though requested, the said administrator has not paid the same, but neglects it.

To this declaration there was a general demurrer and joinder ; and the questions arising upon the case were transferred to this Court for determination.

*Bell*, for the defendant. This is an appeal by the defendant from the report of a commissioner of insolvency upon the estate of Sarah Burleigh. The claim of the plaintiff, allowed in part by the commissioner, was, as appears by the entitling of the appeal and declaration, against the estate of the intestate, who was his wife, against whom he files his declaration founded upon an account annexed, for money had and received, &c.

The defendant believes that, upon familiar and elementary principles, it is clear that no such action will lie. No case can be found of an appeal from the report of a commissioner, where the case, as stated by the plaintiff in his declaration, proceeds upon any other principles than any other suit at law, unless by force of some express statute provision.

The incapacity of a married woman to contract either with her husband or others, or to be made a party, without him, to any suit, is recognized in all the elementary works treating upon the subject. 1 Black. Com. 442 ; *Miller* v. *Miller*, 3 Wms. 357 ; 1 Bac. Ab. 286, Baron and Feme.

A declaration against husband and wife for money lent to the wife at her request, was held bad on error. *Stone* v. *McMain*, 1 Moore & M. ; 7 Taunt. Rep. 432 ; 4 Price, 48. A declaration against them for a debt of the wife, before marriage, alleging

a promise by the wife, after marriage, was held bad. *Morris* v. *Norfolk*, 1 Taunt. Rep. 212.

A *feme covert* is not bound by her assent to a conveyance of her husband. *Rangeley* v. *Spring*, 8 Shepl. Rep. 130.

If the husband assents to a partition of real estate, by which his wife receives more than her share, and, to equalize the partition, he pays money to her cotenants, he acquires no title himself in the lands thus set off, except what his marital rights confer upon him. *Campbell* v. *Wallace*, 12 N. H. Rep. 362.

Even in equity, the idea of their legal identity prevails, except in a few excepted cases. 2 Story Eq. 596.

These, and many other cases that might be cited, show, it is believed, that neither upon the principles regulating the rights growing out of the relation of husband and wife, nor by the rules of pleading, can the present proceeding be sustained.

*Nesmith* & *Pike* and *Vaughan*, for the plaintiff.

I. A declaration may be sufficient to entitle the plaintiff to judgment on a demurrer thereto, though a portion of the counts are bad. *Sevey* v. *Slacklin et al.* 2 Mass. 541 ; *Harrison* v. *McIntosh*, 1 Johns. 385 ; 1 Chitty on Pleading, 685, and cases there cited ; *Douglass* v. *Satterlee*, 11 Johns. 16.

The plaintiff claims judgment upon the demurrer, if any count in his declaration is good.

II. The promise in the fifth count is alleged as made before the marriage between the said Sarah and Daniel, and for a valuable consideration. This is supposed to be sufficient both in equity and at law. The marriage does not annul the contract, it only places it in abeyance. The wife, before marriage, received the property, promised to pay, and has not paid. All this the defendant admits.

The promises in the first three counts are not alleged as made at a time when they could not be legally made. They are not therefore bad. They are presumed to be good, unless the contrary appears.

III. The remaining counts in the declaration may not be strictly legal at common law. The statute contemplates that

---

---

claims against the estate of deceased persons, should, to a certain extent, be paid on equitable grounds, and not be construed by the strictness of the common law. The party may be admitted as a witness at the election of the commissioner. Rev. Stat. chap. 162, § 6.

The commissioner *shall* adjust and allow all just claims which the deceased owed. Rev. Stat. chap. 162, § 7. The creditor may exhibit any just claim and the commissioner *shall* allow the same. The intention of the statute would seem to be, that the Court, to whom an appeal might be taken, should be governed by like just principles. If so, the form of the declaration is not so necessary; a simple allegation of the facts which show a just demand is all that would seem to be necessary.

EASTMAN, J. By examining the declaration in this case, it will be seen, that the claim of the plaintiff is against the estate of his wife to an amount exceeding a thousand dollars. Four hundred dollars of this sum is alleged to be the consideration of a deed of certain lands from the plaintiff to his wife, Sarah Burleigh, given to her before marriage; which sum was never paid, but was due at the time of their intermarriage. And the rest of the claim is for labor and services performed, and improvements made upon the real estate of the wife during coverture, extending over a period of twenty years; and also for moneys paid on account of certain controversies growing out of said real estate.

The pleadings set forth no antenuptial engagements, as preliminary to the marriage, and we must therefore decide the case upon principles governing marital rights and liabilities. These principles are generally very well settled.

By marriage, the husband and wife became one person in law. There is but one will between them, and that is placed in the husband. The very legal existence of the woman is incorporated into that of the husband. The husband becomes, at once, the absolute owner of all the personal property of the wife, which she had in possession at the time of the marriage. Her *choses in action* he can reduce to possession, and they also become abso-

lutely his. Should she die before he reduces them into possession, he can be appointed administrator upon her estate, and obtain their contents; and, according to some high authorities, he is entitled to all her *choses in action*, whether reduced into possession or not, and after his death they go to his personal representatives. *Whitaker* v. *Whitaker*, 6 Johns. Rep. 112; *Stewart* v. *Stewart*, 7 Johns. Ch. Rep. 229. He also gains an interest in, and control over, her chattels real; and if she has only an interest of a life-estate in lands, the husband is entitled to the profits during the marriage. If, at the time of the marriage, she is seised in fee of lands, the husband, upon the marriage, becomes seised of the freehold, *jure uxoris*, and he takes the rents and profits during their joint lives. It is a freehold estate in the husband, since it must continue during their joint lives, at least, and may last during his life, should he become tenant by the curtesy. So, of whatever accrues to the wife during coverture; the law gives the husband the same right over the real estate and chattels real as if they belonged to her before marriage, and the same absolute power over any personal estate or interest accruing to the wife by gift, devise, or otherwise. And as he becomes the possessor of all her means, so the law requires that he shall pay all her debts contracted before marriage. Such are some of the general principles applicable to the rights and liabilities of husband and wife. 1 Black. Com. 442; 1 Bacon's Ab. 286, Baron and Feme; 10 Co. 42; 2 Inst. 510; Co. Lit. 351; 2 Kent's Com. Lecture, 28; *Udall* v. *Kenney*, 3 Cowen's Rep. 590; *Griswold* v. *Penniman*, 2 Conn. Rep. 564; *Shuttlesworth* v. *Noyes*, 8 Mass Rep. 229; *Dade* v. *Alexander*, 1 Wash. 30; *Upshaw* v. *Upshaw*, 2 Hen. & Munf. 381.

The largest portion of this claim is for improvements made upon the real estate of the wife during coverture, and moneys paid in consequence of controversies growing out of that real estate. As the husband receives all the rents and profits of the real estate of the wife, improvements made upon it, generally will compensate for the labor performed. The husband is not obliged to make improvements unless he choses so to do; nor is he compelled to contest the title, and incur expenses thereby. If

11 *

he believes the title to be good, he will contest it, that he may retain the property and have its use. If, on the contrary, he thinks the title bad, he can abandon it without cost.

This plaintiff, by his marriage, obtained all the personal property and *choses in action* belonging to the wife, if she had any. He also enjoyed the whole income of her real estate for twenty years during the coverture; and if they had children, he has also a life-estate as tenant by the curtesy. If he saw fit to make improvements upon the real estate of his wife, he did it at the risk of receiving back a compensation for his labor by an increased income; and, in the event of her death, he cannot charge the estate with the labor, and services and expenses, incurred in improving the real estate. Such a doctrine would strike at the very foundation of marital principles, and in too many instances the whole property would be absorbed by the charges for expenditures. If this branch of the claim can be sustained, then the husband can, without any antenuptial agreement or trust, keep an account against his wife during coverture for all moneys paid and labor expended about her property; and if he may keep an account, which shall be legal, then he must, as a necessary consequence, have the power of instituting a suit against her for its enforcement. In other words, the husband and wife become, in law, separate and distinct persons.

The charges for money paid by the plaintiff in settling the controversy relative to the real estate and upon the bond given, stand upon the same principles. He need not carry on a contest unless he so elects. The giving of the bond by himself and wife is a voluntary act on his part, undertaken for the benefit of his wife's property, the rents and profits of which he was constantly receiving. This matter comes within the principle of *Campbell* v. *Wallace*, 12 N. H. Rep. 362. In that case it was held, that if a husband assents to a partition of land, by which his wife receives more than her share of the real estate, and he in consequence pays the amount required, he acquires by the payment no title *himself to the land thus set off*, except what his marital rights confer upon him, having the benefit of the use himself during the coverture. So, in this case, the money paid

upon the bond or reference, gave him no claim upon the property, or against the estate, other than what he acquired by the coverture in receiving the income of the property.

These views dispose of all the items claimed, except the $400, the consideration of the deed. And in regard to that, we think the demurrer to be equally as well taken, as it was to the other branch of the claim.

This conveyance was made, before marriage, by the plaintiff to his wife without consideration, as the plaintiff says. He regards the land to be worth four hundred dollars, and in his fifth count, alleges a special promise to pay the same. As between these parties, could this claim be enforced, had they never been married? The creditors of the grantor might attach the property, and avoid the conveyance. But even they could not collect the consideration of the grantee, if the agreement between the parties was, that the deed should be without consideration. Neither could the grantor enforce the payment of a consideration which had never formed a part of the contract, or entered into the terms of the conveyance. The most that he could do, would be to avoid the conveyance as a *nudum pactum.* Whether he could do even that, is by no means certain; for, as a general principle, the receipt of the payment of the consideration expressed in a deed cannot be contradicted for the purpose of defeating the conveyance. *Morse* v. *Shattuck,* 4 N. H. Rep. 229 ; *Pritchard* v. *Brown,* 4 N. H. Rep. 397.

But supposing this conveyance had been for a consideration to be paid by the wife before marriage, and was, at the time the marriage ceremony took place, a debt due from the wife to the husband; did not the debt become abrogated by the marriage? The husband is liable for the debts of the wife, contracted before marriage. He assumes at the time of the marriage all her liabilities; or rather the law requires him to assume them. The debts due from him to her become cancelled, as he becomes the owner of her personal property and *choses in action*; and, *vice versa,* the debts due from her to him also become cancelled, as he becomes liable for her debts. Whether, therefore, we view this conveyance as made without consideration, or regard the

claim as a debt due from the wife to the husband at the time of the marriage, it is equally unsustainable upon any recognized principles.

The position of the plaintiff, that "the marriage does not annul the contract, but only places it in abeyance," cannot be carried out without unsettling all the well established principles of marital rights and liabilities, and suspending, for the time being, the operation of the Statute of Limitations. There is no analogy between a contract of this kind and the doctrine of abeyance, as that term is used and applied in the books of law. An estate is said to be in abeyance when there is no person *in esse* in whom it can rest and abide; it being granted, in the first instance, to some person during life, with the inheritance in certain heirs. And the existence of such an estate has been ably controverted, the doctrine being, that the inheritance remains in the grantor until the grantees shall be *in esse.*

The rights of certain persons are excepted from the operation of the Statute of Limitations, but there is no exception that could operate in a case like the present. And unless some principle can be ascertained different from those that have been suggested, this claim would most of it have been barred by the Statute of Limitations.

We have not omitted to examine the position of the plaintiff, that the promises alleged in the first three counts were made at a time when they legally might be. Assuming that to be the fact, the difficulty consists in this, that the plaintiff seeks to enforce them after they have become abrogated by the marriage. They therefore cannot avail him. Nor is there any peculiar power in the Probate Court or in the Superior Court, on appeals, that we can discover, by which this case can be taken out of the operation of general principles applicable to marital rights. The Court of Probate is a court of law, with discretionary powers, and the Superior Court, sitting as a court of appeals from the Probate Court, is governed by the same principles. The decisions of both courts, when acting upon cases of a probate character, are to be governed by the principles of the common and statute law. The Superior Court has chancery powers, but these proceed-

Burleigh *v.* Coffin.

ings are not in Chancery ; and even if they were, we apprehend there is no principle in chancery practice, by which this claim could be allowed.

*Judgment for the defendant, upon the demurrer.*